## ROBERT B. McCABE v. ALVIN SHAVER.

*Overpayment—Action to recover—Waiver of claim.*

Where a party went to a bank to pay a draft, and was informed by the teller that the money handed him was $10 short, which shortage was denied, and the next morning the party returned to the bank, and paid in an extra $10 for the purpose of redeeming the draft, as he claimed, and without waiving his claim to the other $10, but as claimed by the bank in relinquishment of his claim to the $10 in dispute, the court properly left *this* question to the jury in a suit for the recovery of the $10.

Error to Clinton. (Smith, J.) Argued February 1, 1888. Decided March 2, 1888.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Daboll & Brunson,* for appellant.

*J. H. Fedewa* and *Martha Strickland,* for plaintiff.

MORSE, J. The controversy in this case arises over the ownership of a ten-dollar bill.

The plaintiff is a merchant doing business in the village of St. Johns, Clinton county. The defendant is a banker, in the same place.

On the twenty-third day of July, 1884, plaintiff went into the bank of defendant to pay a draft of $100 drawn on him

by a firm at Toledo, Ohio, which had been accepted, and was due on that day. He took with him, as he claims, $10 in change and $90 in bills. To make up this amount he had borrowed $15 of his brother, consisting of a ten-dollar and a five-dollar bill.

The plaintiff testifies that his paper money was in one package, consisting of four ten-dollar bills and ten five-dollar bills. He went to the teller's window, laid the money on the shelf, counted it over, and handed it to Mr. Scott, the teller, who counted it and said there was ten dollars short. The change was all right. Plaintiff contended there was $90 in the bills, and Scott disputed it, saying there was only $80. Finally Scott looked around and found a ten-dollar bill on the floor inside the bank, and said: "Here it is," or "here is your money," or something of that kind. "I dropped it on the floor." The defendant, who was sitting back of Scott, rose up and said: "Perhaps it blowed off from our pile." There was some money—a deposit—lying on the table in the bank. He was not certain whether he asked for the draft or not, but defendant would not admit that plaintiff had paid in $100. The next morning plaintiff went in and paid the bank an additional $10, as he swears, to get his draft. He told defendant in the morning that he was positive he paid in $100 the day before, but that he would pay another $10 in order to get his draft. The plaintiff claims that he paid this $10 to keep his draft from going to protest, and to protect his business from the consequent injury of such protest.

Clarence Scott, the teller, on behalf of the defendant, testified that he counted the money over twice, and there was only $80 in bills. The five-dollar bills were on top when the package was handed in, but in counting it he brought the ten-dollar bills on top. Plaintiff claimed the money was not short. Scott then handed the bills to plaintiff, and plaintiff, counting the money, also made $80 in bills. Then Scott

said, "I don't see where it is," and, stepping back, saw a bill at his feet.

"I said here is your bill or here is a bill, or words to that effect. I picked it up, and he said: 'That is my bill; a ragged bill that I got of my brother.' I then thought of the money on the scratch-book [the deposit spoken of by plaintiff] on the table to my left, and thought that it might have come from there, and I asked Mr. Shaver how much money there was there. He said there was $140. I saw by the deposit slip that there was $140 deposited. I counted it, and there was only $130. I told Mr McCabe there was $10 gone from that pile; I couldn't see how it was, both $10 short. I said, 'I don't see how it belongs to you.'"

The defendant, Shaver, corroborated Scott in his testimony. The $140 was deposited by a Mr. Sullivan, who testified that he deposited that amount. The brother of plaintiff corroborated him as to the lending of the $15, and the denominations of the bills loaned.

Upon the trial it appeared that both the brother of the plaintiff, and Sullivan, identified the bill as being their property before it was taken to the bank. This ten-dollar bill had a hole in it, and was ragged and worn. Scott mixed it up with a lot of other bills. The plaintiff's brother was sent for, looked over the pile of bills, and picked this one out as the ten-dollar bill he loaned his brother. Then the bill was mixed up again with other bills, and Sullivan was sent for. He came and picked out three bills, this one among them. He said he was pretty sure this was his bill, and took some more bills out of his pocket, and showed that the bill in question was folded like the others, and just fitted to the roll of bills in his pocket as he had them folded. The folds and creases of the bills fitted.

There was other corroborative testimony on both sides.

The jury in the circuit returned a verdict for the plaintiff.

The defendant claims that the court committed error in his instructions to the jury. He claims that with full knowledge of all the facts the plaintiff paid the $10 voluntarily,

and therefore in law gave up his claim against the defendant; and that, although he may have been really entitled to it, he cannot, after such voluntary payment, recover it back. He asked the court to so instruct the jury. The court refused to so charge, but said to the jury that if they found the $10 was paid by him as a settlement of the whole matter, and he so intended it, the plaintiff could not recover; but if they found that he paid the money as he claimed for the purpose of getting the accepted draft, and still insisted when he paid it that he had paid the $100 the day before, and they believed that he did so pay the $100, he could recover, the burden of proof being upon him to make this showing.

We think the law was correctly stated by the court, and, the jury having found against the defendant, the judgment must be affirmed, with costs. If the jury believed the plaintiff, the defendant picked up a ten-dollar bill that belonged to plaintiff, and kept it without right. He was not obliged to contest a suit with the Toledo firm upon his draft, nor yet to bring action against the defendant to recover it. He had a right to go there the next morning and redeem his draft, and if he did not then acknowledge that he paid only $90 to the bank the day before, but insisted that the defendant wrongfully had $10 of his money, he was at liberty thereafter to sue for and recover the $10 paid by him, or withheld from him, the day before.

The other Justices concurred.